IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CURTIS GREEN and DEBORAH J. GREEN,

                            Plaintiffs,

    v.

SPECIALIZED LOAN SERVICING, LLC,

                            Defendant.

OPINION & ORDER

15-cv-513-jdp

---

       Plaintiffs Curtis and Deborah J. Green purchased a home with a loan secured by a mortgage. A few years later, they filed for bankruptcy and the Green's obligation to pay the loan was discharged. Defendant Specialized Loan Servicing, LLC (SLS) eventually acquired the right to service the loan and SLS sent letters to the Greens. The Greens allege that SLS's communications violated several provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692. SLS moves to dismiss the complaint. Dkt. 19. The Greens not only oppose the motion, they contend that the motion is frivolous and move for sanctions under Federal Rule of Civil Procedure 11. Dkt. 34. The court will dismiss one of the Greens' claims, but will otherwise deny the motion to dismiss. The court will grant the Greens' motion for leave to file a sur-reply, Dkt. 29, but will deny their motion for sanctions.

ALLEGATIONS OF FACT

       The following facts are taken from the second amended complaint, Dkt. 13, and they are accepted as true. *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The SLS letters are incorporated by reference in the complaint; complete versions are filed with plaintiffs' brief at Dkt. 26-1 and Dkt. 26-2.

The Greens took out a loan to buy a house in 2004. They filed for bankruptcy in 2009, and they were granted discharge of the obligation to pay the loan. The lender foreclosed on the house, and waived any right to a deficiency judgment against the Greens, leaving the Greens essentially free and clear of any obligation on the home loan. The house was sold at a sheriff's sale on December 3, 2014.

The loan was transferred to SLS for servicing, effective December 16, 2014. (The point of any further servicing of the discharged load is unclear.) Less than a week later, SLS sent the Greens a "Notice of Servicing Transfer" letter, dated December 22, 2014. Dkt. 26-1. (The court will call this the "Notice" for short.) The Notice identified SLS as the new servicer of their debt and informed the Greens that any payments "due on or after 12/16/2014" should be sent directly to SLS at its listed address.

The Notice stated in bolded, capital letters: "This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." Dkt. 26-1, at 2. But below that text, the Notice included a bankruptcy disclosure that stated in bolded, capital letters:

> if you are . . . a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof.

*Id.* So the Notice both claimed to be an attempt to collect a debt and disavowed any attempt to collect a debt.

In 2015, the Greens tried to get another loan from a different bank. They discovered a tradeline from SLS on their credit report, noting a past-due amount and a recent late payment notation. The Greens called SLS to clarify and they learned that the entry on their

2

credit report might have been caused by a computer error. SLS then sent a "Verification of Mortgage" (which the court will call the "Verification" for short) by fax to Deborah Green with information about the loan. Dkt. 26-2. Among other information, the Verification stated that the principal balance on the loan was $0.00 and confirmed that the Greens were not delinquent over the previous two years. The Verification also included information indicating that the credit reporting agency was the "requesting company," suggesting that it had solicited the information to correct the tradeline.

The Greens filed this case on August 19, 2015. They amended their complaint on December 17, 2015. Dkt. 6. SLS moved to dismiss the amended complaint, Dkt. 9, but the Greens filed a second amended complaint a few weeks later, Dkt. 13. SLS now moves to dismiss the second amended complaint.[1] Dkt. 19. The Greens have also moved for sanctions under Rule 11. Dkt. 34.


ANALYSIS

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Greens' claim is plausible if they "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Adams v. City of*

---

[1] The Greens have settled with defendant CBCInnovis and dismissed their claims against it with prejudice. Dkt. 33.

*Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (internal citations and quotation marks omitted).

The FDCPA generally prohibits "abusive, deceptive, and unfair debt collection practices" by debt collectors. 15 U.S.C. § 1692. The Greens allege that SLS violated multiple sections of the FDCPA by sending them the Notice that their debt had been transferred to SLS for servicing, causing a false tradeline on their credit report, and sending the Verification. They allege that the communications lacked the requisite disclosures, in violation of 15 U.S.C. § 1692g. They also allege violations of § 1692d (harassment or abuse), § 1692e (false or misleading representations), and § 1692f (unfair practices).

**A.  The motion to dismiss the first amended complaint**

The Greens' second amended complaint superseded SLS's first motion to dismiss, Dkt. 9, and dropped the two claims that SLS had challenged in the motion. Accordingly, SLS's first motion to dismiss will be denied as moot. But SLS asks the court for an order precluding the Greens from again amending to reintroduce the claims that they omitted from the second amended complaint. Dkt. 17. There is no need for such an order because future amendments will require leave of court. If the Greens ask to amend their complaint again, the court will assess the proposed amendment at that time.

**B.  The motion to dismiss the second amended complaint**

SLS has moved to dismiss the second amended complaint for failure to state a claim under the FDCPA. Specifically, SLS maintains that its communications—the Notice and the Verification—were not attempts to collect a debt. It also contends that the second amended complaint fails to sufficiently allege violations of §§ 1692d, 1692e, 1692f, and 1692g.

4

The Greens' claim under the FDCPA must meet two threshold criteria. First, SLS must be a "debt collector." *Bailey v. Sec. Nat'l Serv. Corp.*, 154 F.3d 384, 387-88 (7th Cir. 1998). Second, SLS's communications must have been made "in connection with the collection of any debt." *Ghurek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010).

### 1. Debt collector

Neither party analyzes whether SLS is a debt collector, so the court might deem the matter conceded by SLS. But the question is reasonably straightforward. A debt collector "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" or "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). By contrast, a creditor "offers or extends credit creating a debt," and is not covered by the FDCPA. § 1692a(4); *see also Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003). If, after SLS obtained the debt, it continued merely servicing it like the original creditor, then SLS is more like a creditor. *Id.* But if SLS acquired the debt "for collection," especially after the debt was in default, then it is more like a debt collector. *Schlosser*, 323 F.3d at 536.

When SLS acquired the servicing, not only had the loan been in default, but the underlying property had been foreclosed and sold. In fact, the Verification confirms that the loan had been delinquent for 2069 days. Dkt. 26-2, at 2. The Notice that SLS sent referred to the collection of payments, stating that SLS "will start accepting payments received from you on 12/16/2014." Dkt. 26-1, at 1. It directed the Greens to "send all payments due on or after 12/16/2014 to [SLS]." *Id.* And in both communications, SLS self-identified as a debt

collector. *Id.* and Dkt. 26-2, at 2. Based on these alleged facts, SLS was acting as a debt collector, and the first threshold criterion is satisfied.

### 2. In connection with an attempt to collect a debt

The court uses an objective standard to determine whether SLS sent the Notice and Verification in connection with an attempt to collect a debt. *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 898 (7th Cir. 2015). Multiple factors are relevant to the analysis, including the nature of the parties' relationship, the purpose and context of the communications, and whether the collector made an explicit demand for payment. *Gburek*, 614 F.3d at 385. If the communications were sent "specifically to induce the debtor to settle [the] debt," then the communication is an attempt to collect a debt under the FDCPA. *Id.*

As alleged, SLS and the Greens did not have a relationship before SLS sent the communications. The purported purpose of the Notice was to establish a servicer relationship with the Greens and to inform them that their mortgage loan had been transferred. SLS maintains that it was *required* to send the Notice under the Real Estate Settlement Procedures Act, (RESPA) 12 U.S.C. § 2605(b)(1), which provides that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." But the Greens allege that the mortgage loan no longer existed when SLS sent the Notice: their debt had already been discharged and the property foreclosed and sold at a sheriff's sale. Therefore, they argue that RESPA was not applicable, and SLS's Notice was in connection with SLS's collection attempt. Even if one purpose of the Notice was to comply with RESPA, the Greens allege that another purpose was for SLS to attempt to collect debt payments.

SLS contends that neither of its communications demanded payment of a debt. But "the absence of a demand for payment is just one of several factors" that the court considers. *Gburek*, 614 F.3d at 385. Other factors support the conclusion that SLS's communications were in connection with its attempt to collect on their debt. SLS stated in the Notice that it would "collect your payments going forward," and would "be collecting your mortgage loan payments from you," beginning approximately a week before the date of the letter. Dkt. 26-1, at 1. The Notice directed the Greens to "send payments due on or after 12/16/2014 to [SLS]" at its address. *Id.* These facts support the inference that SLS was attempting to collect the Greens' payments and encouraging them to settle their debt.

Both communications also included the following boilerplate notice: "This is an attempt to collect a debt and any information obtained will be used for that purpose." *Id.* at 2 and Dkt. 26-2, at 2. Although the appearance or absence of this boilerplate is not itself dispositive, *Gburek*, 614 F.3d at 386 n. 3, the FDCPA requires debt collectors to include the notice, 15 U.S.C. § 1692e(11). Thus, its inclusion is *relevant* because the FDCPA applies only to communications made "in connection with the collection of any debt." SLS's attempt to comply indicates that the purpose of its communication was in connection with the collection of the Greens' debt. That is, unless the notice is meaningless, making § 1692e(11) superfluous.

Both communications also contained a disclaimer regarding bankruptcy, stating that if the recipient had discharged his or her debt through bankruptcy, then the communication was merely a status update, and not a demand for payment. Dkt. 26-1, at 2 and Dkt. 26-2, at 2. Where applicable, this disclaimer potentially undermines the debt collection purpose stated in the first notice. But at best, the bankruptcy disclaimer only muddled the

7

communications; other express statements in the Notice indicated that SLS was expecting payment from the Greens on the debt. And even if the communications were merely confusing, yet technically correct, the Greens would still have an actionable claim. *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 758-59 (7th Cir. 2006). But even if the bankruptcy disclaimer undermined the overarching message that the Greens should send their payments to SLS, that message was apparently in error because there was no longer a debt to service.

The parties sharply dispute the meaning and relevance of a recent case from this court: *Whalen v. Specialized Loan Servicing, LLC*, No. 15-cv-410, 2016 WL 126919, at *1 (W.D. Wis. Jan. 11, 2016). In *Whalen*, the defendant, which also happened to be SLS, sent two communications to the plaintiff regarding a discharged mortgage loan. The *Whalen* court split the difference between the two communications, finding that one was an account status update and the other was in connection with an attempt to collect a debt.[2] Both letters in *Whalen* had the same bankruptcy disclosures as the communications in this case. In discussing the "status update" letter, the court stated that "plaintiff fail[ed] to make an argument that the disclaimer [was] insufficient to provide notice that defendant was not using the letter to attempt to [collect] a debt." *Whalen*, 2016 WL 126919, at *7. In other words, the plaintiff had waived her argument. But, as discussed above, in this case, the bankruptcy disclosure in the Notice and Verification are outweighed by the other aspects of the communications that indicate an attempt to collect. The court concludes that in this case,

---

[2] The *Whalen* court found that the status update letter was similar to a status update letter in *Bailey v. Security National Servicing Corporation*, 154 F.3d 384 (7th Cir. 1998). In that case, however, the Seventh Circuit was reviewing a summary judgment decision, the defendant was not a debt collector, and the debt at issue was not in default. That is not the case here.

the communications themselves show that SLS's communications were an attempt to collect a debt.

### 3. Section 1692d

SLS contends that the Greens failed to allege that SLS violated 15 U.S.C. § 1692d. That section prohibits "any conduct the natural consequence of which [was] to harass, oppress, or abuse any person in connection with the collection of a debt." The Greens apparently have abandoned this claim because they do not address it in their briefing. Moreover, the second amended complaint fails to allege that SLS's two written communications were harassing, oppressive, or abusive. Accordingly, this claim will be dismissed.

### 4. Section 1692e

SLS contends that the Greens failed to state a claim under § 1692e. The Greens allege violations of: § 1692e(2), which prohibits false representations of the character, amount, or status of a debt or of services rendered by a debt collector; § 1692e(5), which prohibits threats to take illegal action; § 1692e(8), which prohibits communications or threats of communications of false credit information; and § 1692e(10), which prohibits false representations or deceptive means to collect a debt. "Section 1692e applies even when a false representation is unintentional." *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) (internal citations omitted); *see also Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("Debt collectors may not make false claims, period." (citations omitted)). If SLS's communications "would deceive or mislead an unsophisticated, but reasonable, consumer," then those communications violate § 1692e. *Bravo v. Midland Credit Mgmt., Inc.*, 812 F.3d 599, 603 (7th Cir. 2016). "Dismissal is appropriate only when it is

9

apparent from a reading of the letter that not even a significant fraction of the population would be misled by it." *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014) (internal quotation marks and citations omitted).

The Greens allege that SLS sent communications that were about a debt that had been discharged, and implied that the Greens owed SLS payments on it. The Notice represented that an amount was owed when none was, falsely representing both the amount and legal status of the debt. These allegations state a claim under § 1692e(2). *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 998 (7th Cir. 2003) (a communication that "falsely implied that [the recipient] had to pay a debt discharged in bankruptcy" could violate § 1692e).

The Notice also included an insert about sharing the Greens' credit information. The Greens allege that the insert constituted a threat to not only share their information, but to share *false* information, by placing a tradeline on the Greens' credit report when the Greens did not owe any payments to SLS. As alleged, the Notice threatens to communicate false credit information, which constitutes an illegal action. If that kind of threat would mislead or deceive an unsophisticated consumer, measured objectively, then it would violate both § 1692e(5) and (8). *Ruth v. Triumph P'ships*, 577 F.3d 790, 797-800 (7th Cir. 2009). The threat could also be considered a "false representation or deceptive means to collect or attempt to collect any debt or to obtain any information concerning a consumer," violating § 1692e(10). These claims may ultimately be difficult to prove, but the Greens have alleged them sufficiently to state a claim.

### 5.  Section 1692f

SLS contends that the Greens failed to allege that SLS's conduct and communications constituted "unfair or unconscionable means to collect or attempt to collect any debt," in violation of § 1692f. "Whether a particular collection practice other than those specified in § 1692f qualifies as unfair or unconscionable is assessed objectively and is a question for the jury unless reasonable jurors could not find that the practice described rose to that level." *Todd v. Collecto, Inc.*, 731 F.3d 734, 739 (7th Cir. 2013). But asking a consumer to pay a debt that has been discharged in bankruptcy is not unfair or unconscionable within the meaning of § 1692f. *Turner*, 330 F.3d at 998. Therefore, that allegation alone cannot support a claim under § 1692f.

But the Greens also allege that SLS violated § 1692f(1), which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." They maintain that SLS was not entitled to the requested payments—either by agreement or by law—because the parties had no agreement and because the underlying debt had been discharged. This states a claim.

The Greens also allege that sharing their credit information by putting a false tradeline on their credit report was an unfair or unconscionable practice. SLS had no legal authority to add a false tradeline to the Greens' credit report, making it improper for SLS to suggest that it could do so or to actually do so. *Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012) ("[I]t is improper under the FDCPA to imply that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass."). At this point, these allegations are enough to state a claim.

### 6.  Section 1692g

The Greens allege that SLS's communications lacked the requisite disclosures and follow up information under § 1692g. SLS contends that these allegations fail to state a claim because they do not apply once the debtor has paid the debt. *See* § 1692g(a). It argues that by discharging their debt, the Greens essentially paid it. This argument fails. Paying and discharging a debt through bankruptcy are not the same. And SLS purportedly reached out to the Greens in the first place because it believed that they still had to pay the debt. Thus, the debt collection communications that it sent at that time, and under that belief, needed to comply with the statute, including the requirements about disclosures and follow up letter. Accordingly, the Greens have stated a claim for a violation of § 1692g.

In sum, the Greens may proceed on all of their FDCPA claims except for their § 1692d claim.

## C.  Motion for Rule 11 sanctions

The Greens have moved to sanction SLS and its counsel. Dkt. 34. They allege that SLS knew that it did not have a servicing relationship with the Greens at the time that it reached out to them. Accordingly, the Greens argue that the entire basis for SLS's motion to dismiss is unfounded. SLS maintains not only that sanctions against it are unwarranted, but also that the Greens' motion for sanctions is itself sanctionable, and it asks for the attorney fees that it incurred responding to the motion. All requests for sanctions and fees will be denied.

Rule 11(b) requires that all representations to the court be non-frivolous and supported by evidence. SLS did not make false representations to the court. Nor did it make arguments in bad faith. And although SLS lost most of its arguments related to its motions to

dismiss, those arguments were not frivolous or baseless. *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 917 (7th Cir. 2015) ("A court should not impose sanctions on a party that loses an argument, as long as the argument was not entirely groundless."). To the contrary, SLS presented a fair argument that the bankruptcy disclaimer in both communications undermined the other parts of the messages soliciting payments.

And even assuming that SLS knew that the Greens did not own the property underlying the mortgage at issue in this case when it sent the Notice—an unproven assumption at the moment—that fact does not end the inquiry or make all subsequent arguments frivolous. SLS argued that the purpose of its communications was to provide a status update. Its arguments did not rely on its knowledge or ignorance that the loan had been discharged. Accordingly, SLS's arguments to the court were not frivolous, and the motion for sanctions will be denied. SLS's request for its attorney fees responding to the motion will also be denied. Neither party's conduct was egregious enough to warrant sanctions, and the parties are encouraged to focus on the merits of the case from here on.

ORDER

IT IS ORDERED that:

1. Defendant Specialized Loan Services, LLC's motion to dismiss the amended complaint, Dkt. 9, is DENIED as moot.

2. Defendant's motion to dismiss the second amended complaint, Dkt. 19, is substantially DENIED, as discussed above.

3. Plaintiffs' motion for leave to file a sur-reply, Dkt. 29, is GRANTED.

4. Plaintiffs' motion for sanctions, Dkt. 34, is DENIED. Defendant's request for its attorney fees in responding to the motion for sanctions, Dkt. 36, is DENIED.

Entered July 21, 2016.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

14